THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ERICA M. LISH, ) | Case No. 1:05CV00143 DS |
| Plaintiff, ) | |
| vs. ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, ) Commissioner of the Social Security Administration, | |
| ) | |
| Defendant. ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Erica M. Lish filed an application for Social Security benefits alleging a disability beginning on May 31, 2002. After a hearing, an administrative law judge ("ALJ") concluded at step four of the five-part sequential evaluation process, see 20 C.F.R. § 416.920, see also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), that Plaintiff can return to her past work as an accounting clerk and, therefore, was not disabled. Plaintiff appeals her denial of benefits.

Ms. Lish argues that (1) the ALJ erred in not finding that her impairments meet or equal one of the Listings of Impairments; (2) the ALJ erred in failing to find her disabled because she meets "the Grids"; (3) the ALJ erred in failing to give her treating physician's opinion controlling weight; (4) the ALJ erred in determining her residual functional capacity; (5) the ALJ erred in

finding that she could return to her past relevant work as an accounting clerk because that job is beyond her residual functional capacity; (6) the ALJ erred in finding that her migraine headaches were a sever impairment but would not affect her ability to work; and (7) the ALJ erred in not finding her neck and back conditions to be medically determinable severe impairments.

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if he applied the correct legal standards. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

The Court rejects Plaintiff's first claim that the ALJ erred in not finding that her severe impairments meet or equal Listings 1.02 and 1.03 of the Listings of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, § 1.02A and § 1.03. As the Commissioner notes, both Listings require a documented "inability to ambulate effectively" which is defined as "having insufficient lower

extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00B2b. This section further explains:

> [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ found, and the Court agrees, that the record does not document an inability to ambulate effectively as defined. The ALJ specifically found that Dr. Gordon's notes did not reflect any evidence of problems with her gait, although the Court notes that in 1995 Dr. Gordon observed that Plaintiff has a "little bit of abductor gait when she walks". Likewise, Plaintiff's report of her daily activities (Tr. 281-86), as the ALJ noted, are inconsistent with an inability to ambulate effectively as defined.

The Court agrees with the Commissioner that Plaintiff's next contention, that the Medical-Vocational Guidelines direct a

conclusion of "disabled" for a person of her age and education who is limited to performing sedentary work, is based on an incorrect statement of her age and an unfounded assumption that she has no transferable skills. It is undisputed that Plaintiff was 52 years of age, not 55, as of the date of the ALJ's decision. An application for benefits remains in effect until the ALJ's hearing decision is issued. 20 C.F.R. § 404.602(a). "If [a claimant] meets all the requirements for entitlement after the period for which [her] application was in effect, [she] must file a new application for benefits." Id. at 404.620(a)(2). Moreover, as the Commissioner notes, because the ALJ did not proceed to step five of the sequential evaluation , the question of transferable skills was not considered and the Medical-Vocational Guidelines were inapplicable.

Plaintiff next contends that the ALJ erred when he did not give Dr. Gordon's opinions controlling weight. The ALJ must give substantial weight to the evidence and opinions of the claimant's treating physicians unless good cause is shown for finding to the contrary. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)("ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record"). A treating physician's

opinion may be rejected if it is not "well supported by clinical and laboratory diagnostic techniques" and if inconsistent with other substantial evidence of record. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). "[A] treating physician's opinion may be rejected if the [Commissioner] gives specific, legitimate reasons for doing so." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988).

The ALJ stated that he considered the evidence from Plaintiff's treating physician, but did not give controlling weight to Dr. Gordon's opinion, that Plaintiff is unable to work due to constant pain and the need to change positions, because the ALJ did not find it consistent with other substantial evidence of record. As the ALJ noted, although Dr. Gordon began treating Plaintiff in 1993 for injuries sustained in a motor vehicle accident, since December of 1996 he had examined Plaintiff on only two occasions, July 29, 2002 and October 28, 2002. On July 29, 2002, Dr. Gordon diagnosed Plaintiff with mild arthritis of the hip, knee, and ankle, and traumatic arthritis of the patellofemoral joint with secondary bursitis, retained hardware with secondary bursitis, and some significant depression. (Tr. 105). He prescribed a mild antidepressant which was refused, over-the-counter pain medication, recommended that Plaintiff have her hardware removed, and noted that Plaintiff would have "very little disability based on range of

motion" under the AMA 4th Edition Guide. (*Id.*). Dr. Gordon noted that overall her x-rays looked acceptable (*Id.*)

On October 28, 2002, Plaintiff saw Dr. Gordon after developing left hip pain in addition to right leg pain. Dr. Gordon's clinical findings were tenderness of the left hip, swelling of the right knee, and tenderness at the distal insertion of the biceps on both knees (Tr. 180). His diagnosis was overuse trochanteric bursitis of the left hip and left biceps secondary to a bad right leg, and right biceps tendinitis secondary to hardware and her limp in addition. *Id.* Dr. Gordon prescribed Bextra because Plaintiff experienced stomach upset from ibuprofen. Plaintiff declined a cortisone shot as well as the recommendation that she have the hardware removed from her right knee. Dr. Gordon also prescribed physical therapy.

In January of 2003, Dr. Gordon completed a Physician's Assessment of Physical Capacities (Short Form) (Tr. 159) comprised mostly of checklists, wherein he assessed Plaintiff's general physical capacity. Because his opinion was not supported by his limited objective findings the ALJ rejected Dr. Gordon's assessment that Plaintiff needed to lie down for a total of two hours in an eight hour work day and needed to limit her occasional lifting and carrying to 5 and 10 pounds.

6

The record reasonably can be viewed as supporting the ALJ's findings that neither Dr. Gordon's January 2003 report nor his office notes contained objective medical evidence that support his opinion that Plaintiff is disabled due to constant pain and the need to change positions. Because the ALJ gave specific legitimate reasons for not giving Dr. Gordon's opinions controlling weight, the Court finds no error.

Having rejected Plaintiff's position that the ALJ improperly determined that the opinion of Dr. Gordon as to Plaintiff's limitations was not entitled to controlling weight, the Court likewise finds no error in Plaintiff's next two contentions that the ALJ's assessment of her residual functional capacity contradicts the medical opinion of Dr. Gordon. In making his residual functional capacity determination, the ALJ clearly states that he considered the entire record, including Plaintiff's testimony. The ALJ acknowledged that Plaintiff "would experience discomfort with sitting more that 15 minutes at a time, standing more than 10 to 20 minutes at a time, and lifting more than 20 pounds, and would need to elevate her leg" (Tr. 24), but noted that "the residual functional capacity was reduced to accommodate those limitations." (Id.). He specifically found Plaintiff not credible "to the extent that she is unable to perform any work activity at any exertional level because of inconsistencies in the record as a

7

whole, including significant gaps in the claimant's history treatment, her pain can be controlled with treatment, and description of daily activities." (*Id.*) The ALJ further noted that Plaintiff's credibility as to the degree of her pain and other subjective complaints was not bolstered by the course of medical treatment.

Plaintiff's contention that the ALJ's erred when he found that her migraine headaches, along with other impairments, were severe enough to impose more than minimal limitations on her ability to work, but not enough to affect her ability to work, is also rejected. The evidence of record is sufficient to support the ALJ's finding that Plaintiff's migraine headaches were not of sufficient frequency or intensity to affect her ability to work. The record reflects that Plaintiff sought medical treatment for migraine headaches once in 2003, twice in 2002, and sought no treatment in 2001. On each occasion her headache quickly resolved with medication.

Finally the Court rejects Plaintiff's contention that the ALJ erred in not finding her neck and back pain to be medically determinable sever impairments. Although the ALJ acknowledged the record evidence that Plaintiff received numerous chiropractic adjustments from February 2001 through September 2002, he noted the

absence of any radiographic or objective findings to support the etiology of her pain. The existence of a severe impairment must be established by objective medical evidence. See 42 U.S.C. § 423(d)(5)(A): 20 C.F.R. § 404.1508. A chiropractor is not an "acceptable source" of medical evidence to establish an impairment, although such evidence may be used to show the severity of an impairment and how it affects a claimant's ability to work. See 20 C.F.R. § 404.1513.

For the forgoing reasons, the decision of the Commissioner as to the Plaintiff Erica M. Lish is AFFIRMED.

DATED this 21st day of November, 2006.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT